# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In the Matter of: Tax Sale 2018-Upset :
            : No. 238 C.D. 2019
Appeal of:         :
B. Monte Kemmler and Orpha G. : Argued: December 10, 2019
Kemmler         :


BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
     HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE McCULLOUGH       FILED: February 28, 2020


   B. Monte Kemmler and Orpha G. Kemmler (collectively, Taxpayers) appeal from the order of the Court of Common Pleas of Mifflin County (trial court), dated February 4, 2019, that dismissed Taxpayers' objections and exceptions, and concluded that their due process rights were not violated with regard to the upset tax sale of their property that occurred on September 10, 2018. Upon review, we affirm.


## Background

   Taxpayers were the owners of property located at 1002 Front Street, Newton Hamilton, Mifflin County, Pennsylvania, and bearing the map number "11 ,02-0062" (Property). (Reproduced Record (R.R.) at 68a, Notes of Testimony (N.T.) at 27.)[1] Taxpayers failed to pay real estate taxes. (R.R. at 28a.) As a result, on May

---

[1] Taxpayers have failed to comply with Pennsylvania Rule of Appellate Procedure (Pa. R.A.P.) 2173, which requires pages of the reproduced record to be numbered in Arabic figures, followed by a small "a." Thus, we treat the first page of the reproduced record as page "1a," and

**(Footnote continued on next page…)**

2, 2017, a notice of return and claim was sent to Taxpayers regarding unpaid 2016 real estate taxes. *Id*. The notice included the following warning:

> IF YOU FAIL TO PAY THIS TAX CLAIM OR FAIL TO TAKE LEGAL ACTION TO CHALLENGE THIS TAX CLAIM, YOUR PROPERTY WILL BE SOLD WITHOUT YOUR CONSENT AS PAYMENT FOR THESE TAXES. YOUR PROPERTY MAY BE SOLD FOR A SMALL FRACTION OF ITS FAIR MARKET VALUE. IF YOU PAY THIS TAX CLAIM BEFORE JULY 1, 2018, YOUR PROPERTY WILL NOT BE SOLD. IF YOU PAY THIS CLAIM AFTER JULY 1, 2018[,] BUT BEFORE THE ACTUAL SALE, YOUR PROPERTY WILL NOT BE SOLD BUT WILL BE LISTED ON ADVERTISEMENTS FOR SUCH SALE. IF YOU HAVE ANY QUESTIONS, PLEASE CALL YOUR ATTORNEY, THE TAX CLAIM BUREAU [(BUREAU)] AT THE FOLLOWING TELEPHONE NUMBER (717) 248-6571, OR THE COUNTY LAWYER REFERRAL SERVICE.

*Id*. (Emphasis in original.) By notice dated June 4, 2018, Taxpayers were informed that their property bearing map number "11 ,02-0062," would be sold at a tax sale on September 10, 2018 at 7:00 p.m. (R.R. at 29a.) The notice included the following warning:

> WARNING 'YOUR PROPERTY IS ABOUT TO BE SOLD WITHOUT YOUR CONSENT FOR DELINQUENT TAXES. YOUR PROPERTY MAY BE SOLD FOR A SMALL FRACTION OF ITS FAIR MARKET VALUE. IF YOU HAVE ANY QUESTIONS AS TO WHAT YOU MUST DO IN

---

**(continued…)**

given our numerical re-designation, we number and cite to other pages in the reproduced record accordingly.

ORDER TO SAVE YOUR PROPERTY, PLEASE CALL YOUR ATTORNEY, THE TAX CLAIM BUREAU AT THE FOLLOWING TELEPHONE NUMBER (717) 248-6571 OR THE COUNTY LAWYER REFERRAL SERVICE.'

*Id*. (Emphasis in original.) The notice further stated that

the sale of this [P]roperty may, at the OPTION of the BUREAU, be stayed if the Owner thereof or any lien creditor of the Owner, on or before the date of sale, enters into an agreement with the BUREAU to pay taxes[,] claims[,] and costs in installments in the manner provided by [the Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§5860.101 - 5860.803 (RETSL)], and the agreement to be entered into.

*Id*. (emphasis in original). A second notice, dated July 5, 2018, was sent to Taxpayers bearing the same warnings as the notice dated June 4, 2018. (R.R. at 21a.) On August 13, 2018, the Property was posted for sale by the Sheriff. (R.R. at 22a.)

On September 10, 2018, the Property was exposed and sold at the upset tax sale. (R.R. at 32a-39a.) On September 27, 2018, the trial court issued a Confirmation Nisi upon the Bureau's consolidated return of the 2018 upset tax sale. (R.R. at 3a.) On October 26, 2018, Taxpayers filed objections and exceptions to the Confirmation Nisi. (R.R. at 4a.) Taxpayers argued that the Bureau's sale of the property was impermissible and unconstitutional. (R.R. at 5a.) Taxpayers argued that the sale should not have been conducted under RETSL, but should have been conducted under what is commonly known as the Municipal Claims and Tax Liens Act.[2,3] In the alternative, Taxpayers argued that notice of sale was not properly given

---

[2] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§7101-7505.

[3] Taxpayers have abandoned this argument in their brief to this Court.

**(Footnote continued on next page…)**

3

and did not advise them of their rights under section 603 of RETSL (Section 603), 72 P.S. §5860.603.[4]  Specifically, Taxpayers argued that under Section 603 they were

---

**(continued…)**

[4] Section 603 provides in full:

> Any owner or lien creditor of the owner may, at the option of the bureau, prior to the actual sale, (1) cause the property to be removed from the sale by payment in full of taxes which have become absolute and of all charges and interest due on these taxes to the time of payment, or (2) enter into an agreement, in writing, with the bureau to stay the sale of the property upon the payment of twenty-five per centum (25%) of the amount due on all tax claims and tax judgments filed or entered against such property and the interest and costs on the taxes returned to date, as provided by this act, and agreeing therein to pay the balance of said claims and judgments and the interest and costs thereon in not more than three (3) instalments all within one (1) year of the date of said agreement, the agreement to specify the dates on or before which each instalment shall be paid, and the amount of each instalment. So long as said agreement is being fully complied with by the taxpayer, the sale of the property covered by the agreement shall be stayed.  But in case of default in such agreement by the owner or lien creditor, the bureau, after written notice of such default given by United States mail, postage prepaid, to the owner or lien creditor at the address stated in the agreement, shall apply all payments made against the oldest delinquent taxes and costs, then against the more recent.  If sufficient payment has been made to discharge all the taxes and claims which would have caused the property to be put up for sale, the property may not be sold.  If sufficient payment has not been received to discharge these taxes and claims, the bureau shall proceed with the scheduled upset sale or at a special upset sale, either of which is to be held at least ninety (90) days after such default.  If a party to an instalment agreement defaults on the agreement, the bureau shall not enter into a new instalment agreement with that person within three (3) years of the default.

**(Footnote continued on next page…)**

4

entitled to notice that they had a right to enter into an installment agreement with the Bureau to pay their delinquent taxes.

A hearing was convened on December 5, 2018, where the trial court received evidence and heard argument on the objections and exceptions. (R.R. at 43a.) Orpha Kemmler (Mrs. Kemmler) testified at the hearing. (R.R at 68a, N.T. at 27.) Mrs. Kemmler explained that in the past she had attempted to pay her delinquent taxes by way of an installment agreement, but did not attempt to with respect to the sale at issue. (R.R. at 68a-69a.) Mrs. Kemmler testified that when she received the present notice and saw the provision about the option to enter into installment agreements, she did not understand it. (R.R. at 69a.) She explained that when she read the notice she did not understand it meant that if she paid 25% of the amount due, she would be entitled to enter into an installment agreement for the balance of her delinquent taxes owed prior to the sale of the Property. *Id*. However, she explained that she had been denied such an option in the past. *Id*. Mrs. Kemmler testified that she did not recall if the Bureau told her that if she paid 25% of the unpaid taxes, she would be given the option to make payments and possibly stay the sale of the property. (R.R. at 71a-72a.)

The trial court dismissed Taxpayers' objections and exceptions on February 4, 2019. (Trial court op. at 1, R.R. at 87a.) Relying on *Moore v. Keller*, 98 A.3d 1, 5 (Pa. Cmwlth. 2014), and *In re Consolidated Return of Tax Claim Bureau of County of Beaver from August 16, 2011 Upset Sale for Delinquent Taxes*, 105 A.3d 76, 83 (Pa. Cmwlth. 2014), *appeal denied*, 121 A.3d 497 (Pa. 2015), it concluded that

---

**(continued…)**

72 P.S. §5860.603.

*after* a property owner has paid at least 25% of the delinquent taxes due, a taxing authority is required to inform the property owner of the option to enter into an installment agreement to pay the rest of the delinquent taxes, and the failure to do so is a due process violation. *Id*. The trial court stated that Taxpayers **did not make the 25% payment** and, therefore, Section 603 was not applicable and Taxpayers were not entitled to explicit notice of the installment agreement option. *Id*. Nevertheless, the trial court determined that even if Taxpayers were entitled to notice that they had a potential right under Section 603, the court could not find that due process rights were violated. (Trial court op. at 2, R.R. at 88a.) The trial court determined that the notice of public sale clearly stated that the Bureau had the option to enter into an installment agreement, Taxpayers had entered into a similar agreement under Section 603 in the past and, therefore, their due process rights were not violated. *Id*. Taxpayers subsequently appealed to this Court.

On appeal,[5] Taxpayers raise the single issue of whether the trial court erred in dismissing their objections and exceptions to the September 10, 2018 tax sale.[6] In support of their argument, Taxpayers assert that under Section 603 they were permitted to enter into an installment agreement if 25% of their tax debt had been paid. Taxpayers further argue that, after the 25% payment threshold has been

---

[5] "Our review in tax sale cases is 'limited to determining whether the trial court abused its discretion, clearly erred as a matter of law[,] or rendered a decision with a lack of supporting evidence.'" *In re Consolidated Reports and Return by the Tax Claims Bureau of Northumberland County of Properties*, 132 A.3d 637, 643 n.12 (Pa. Cmwlth. 2016).

[6] In their statement of errors complained of on appeal, Taxpayers raised issues under the United States and Pennsylvania Constitutions. However, counsel for Taxpayers did not pursue these issues in their brief. At oral argument held on December 10, 2019, counsel for Taxpayers clarified that these two issues were abandoned because our Supreme Court had issued an allowance of appeal on these issues in a separate action docketed at *Fred Lohr v. Saratoga Partners, L.P.,* (Pa., No. 67 MAP 2019, filed September 4, 2019).

6

met, any taxpayer is unequivocally entitled to notice of his right to enter into an installment agreement. Taxpayers point to our decision in *Darden v. Montgomery County Tax Claim Bureau*, 629 A.2d 321, 323-24 (Pa. Cmwlth. 1993), for the proposition that even if notice has previously been given of the option to enter into an installment agreement once the 25% threshold was met, a taxpayer is entitled to notice of the potential to enter into an installment agreement. Taxpayers also point to our decision in *Jenkins v. Fayette County Tax Claim Bureau*, 176 A.3d 1038 (Pa. Cmwlth. 2018), for the proposition that a taxpayer is entitled to notice of the installment agreement option when he attempted to pay 25% of his delinquent tax liability. Taxpayers argue that they were entitled to notice of their potential right to enter into an installment agreement *before* they paid 25% of their outstanding tax liability.

Additionally, Taxpayers argue that the trial court erred when it found that "[Taxpayers] were aware of the installment plan, as they had previously been on the plan with the [] Bureau." (R.R. at 88a.) Taxpayers argue that this conclusion is erroneous because Mrs. Kemmler testified that Taxpayers never entered into an installment agreement under Section 603.

The Bureau argues that the law clearly states that where an owner pays at least 25% of the amount of delinquent taxes that are due, a taxing authority is required to inform him of the option to enter into an installment agreement. The Bureau argues that because Taxpayers did not make a qualifying payment of 25%, they were not entitled to notice of the option to enter into an installment agreement.

**Discussion**

7

The question before this Court is whether Taxpayers were entitled to notice of the option to enter into an installment agreement before paying 25% of the outstanding tax delinquency. Section 603, in pertinent part, provides that

> [a]ny owner or lien creditor of the owner may, at the option of the bureau, prior to the actual sale . . . (2) enter into an agreement, in writing, with the bureau to stay the sale of the property upon the payment of twenty-five per centum (25%) of the amount due on all tax claims and tax judgments filed or entered against such property and the interest and costs on the taxes returned to date, as provided by this act, and agreeing therein to pay the balance of said claims and judgments and the interest and costs thereon in not more than three (3) instalments all within one (1) year of the date of said agreement, the agreement to specify the dates on or before which each instalment shall be paid, and the amount of each instalment.

72 P.S. §5860.603.

In interpreting this provision, this Court has consistently held that *if an owner has paid at least 25% of his delinquent taxes*, *then* a taxing authority is required to inform the owner of the option to entire into an installment agreement, and the failure to do so is a violation of the taxpayer's due process. *Moore*, 98 A.3d at 5. Specifically, "**the tax claim bureau must notify a taxpayer of [his or] her rights under Section 603 *after* the receipt in excess of twenty-five percent of the outstanding delinquency**." *In re Sale by Tax Claim Bureau of Bedford County of Tax Parcel G.14-0.00-007*, 112 A.3d 685, 689 (Pa. Cmwlth. 2015) (bold emphasis added; italicized emphasis in original) (citing *In re Consolidated Return of Tax Claim Bureau of County of Beaver,* 105 A.3d at 83).

8

Here, Taxpayers do not dispute that they did not pay the 25% threshold amount necessary to trigger the notice of the option under Section 603 to enter into an installment agreement with the Bureau. Thus, under our precedent, the Bureau was under no duty to provide any notice that an installment agreement was available under Section 603. *See*, *e.g*., *Barker v. Chester County Tax Claim Bureau*, 143 A.3d 1069, 1075 (Pa. Cmwlth. 2016) (concluding that a taxpayer who paid over 25% of her delinquent tax debt should have been notified of the option to enter into an installment agreement), and *In re Upset Sale of Properties Against Which Delinquent 1981 Taxes Were Returned to Tax Claim Unit on or About the First Monday of May, 1982,* 559 A.2d 600, 601 (Pa. Cmwlth. 1989) (same).

Nevertheless, Taxpayers argue that they were unaware of the potential to enter into an installment agreement because the notice sent by the Bureau did not inform them of this option. Taxpayers argue that the duty of the Bureau to inform a taxpayer of the installment agreement option arises prior to the payment of 25% of the delinquent tax liability. However, our cases above are clear on this issue; this burden is not placed on the Bureau until **after** 25% of the delinquent tax liability is paid.

Nonetheless, Taxpayers cite to this Court's decisions in *Darden* and *Jenkins* in an attempt to bolster their argument. In *Darden*, the taxpayer owned property that was sold at tax sale. 629 A.2d at 323. Prior to the sale, the taxpayer made payments toward the outstanding tax liability. *Id*. This Court found that because the taxpayer had paid 25% of the tax debt, due process required that the Bureau inquire whether the taxpayer wished to enter into a written installment agreement. *Id*. at 324. We also concluded that the notice contained elsewhere in the record indicating the possibility of entering into an installment agreement was

9

insufficient to effectuate the appropriate notice *after* a qualifying payment was received. *Id*. (Emphasis added.) Thus, *Darden* is in accord with our precedent that a taxpayer is entitled to affirmative notice that an installment agreement may be entered into only after payment of 25% of the delinquent tax liability,

Contrary to Taxpayers' argument, *Jenkins* actually supports our conclusion. In *Jenkins*, the taxpayer was delinquent on her tax payments. 176 A.3d at 1040. The taxpayer made a significant payment toward her outstanding tax liability and entered into an agreement with the tax claim bureau to make payments. *Id*. Subsequently, the taxpayer went to the tax claim bureau to make payments toward the taxes that she owed but was told that she could not make a payment because the property was already sold. *Id*. The tax sale was subsequently set aside. *Id*. We concluded that where a taxpayer made a payment toward a delinquent tax liability and the tax claim bureau did not determine whether the taxpayer paid 25% of the delinquent liability, the tax claim bureau violated its duty under Section 603. *Id*. at 1044. Thus, *Jenkins* establishes that the bureau must determine if a payment meets the 25% threshold, and if so, the taxpayer must be notified of the possibility to enter into an installment agreement. Neither of these cases establish, as Taxpayers argue, that notice of a potential installment agreement must be given **before** 25% of any delinquent tax liability is paid.

Relatedly, Taxpayers assert that the language in the notice advising Taxpayers that "the sale of this property may, at the OPTION of the BUREAU, be stayed if the Owner thereof . . . enters into an agreement with the BUREAU to pay taxes . . . in installments in the manner provided by said Act, and the agreement to be

10

entered into,"[7] (R.R. at 29a), erroneously states the law because *Darden* **requires** the Bureau to offer a payment plan.  However, in *Darden*, we again explained the affirmative duty of a tax claim unit to "inquire whether the property owner desired to enter into an installment agreement."  629 A.2d at 323.  Moreover, in *In re Tax Sale Pursuant to Real Estate Tax Sale Law of 1947*, 8 A.3d 358, 365 (Pa. Cmwlth. 2010), we unequivocally explained:

> Section 603 of the Law provides that "[a]ny owner or lien creditor of the owner may, *at the option of the bureau,* prior to sale . . . enter into an agreement, in writing, with the bureau to stay the sale of the property upon the payment of twenty-five per centum (25%) of the amount due on all tax claims . . . and . . . to pay the balance . . . in not more than three (3) installments all within one (1) year of the date of said agreement. . . ." 72 P.S. §5860.603 [(emphasis in original)].
>
> As such, *it is not a statutory right of the taxpayer to pay delinquent taxes in installments, but rather an option which is determined by the Tax Bureau*.

---

[7] This particular language must be included in the notice pursuant to section 602(f) of RETSL, which provides in full as follows:

> (f) The published notice, the mail notice and the posted notice shall each state that the sale of any property may, at the option of the bureau, be stayed if the owner thereof or any lien creditor of the owner on or before the actual sale enters into an agreement with the bureau to pay the taxes in instalments, in the manner provided by this act.

72 P.S. §5860.602(f).

(Emphasis added.) Thus, contrary to Taxpayers' assertion, the Bureau is not under any affirmative duty to enter into an installment agreement, but is only required to notify Taxpayers of the possibility after 25% of the delinquent tax liability is paid.

Before concluding, we address Taxpayers' contention that the trial court erroneously decided that, "[Taxpayers] were aware of the installment plan as they had previously been on the plan with the [Bureau]." (R.R. at 88a.) Taxpayers' contention that this finding is unsupported by the record is correct. Contrary to the trial court's conclusion, Mrs. Kemmler testified that Taxpayers were denied the option of a payment plan in the past, not that they had participated in a payment plan. (R.R. at 68a-69a, N.T. at 27-28.) However, because we have concluded that the trial court was correct in deciding that Taxpayers were not entitled to notice of the installment agreement option, the trial court's error finding that Taxpayers were previously on an installment plan does not change our analysis.

Based on our precedent and the language of Section 603, we cannot conclude that Taxpayers were entitled to notice of the option to enter into an installment agreement before payment of 25% of the outstanding tax liability was made. Section 603 grants Taxpayers with no vested right or entitlement to enter into an installment agreement. Rather, the Bureau has discretion ("at the option") to enter into such an agreement. 72 P.S. §5860.603. Therefore, the taxpayers were not entitled to notice as a matter of constitutional due process. *See Miller v. Workers' Compensation Appeal Board (Pavex, Inc.)*, 918 A.2d 809, 812-13 (Pa. Cmwlth. 2007) (concluding that where a statute does not grant an individual "an actual entitlement" or "an unqualified right to receive the benefit," the individual has nothing "more than a mere expectation" of the benefit and, therefore, is not entitled to protection under

12

the due process clause). Based on the foregoing, Taxpayers would have only been entitled to such notice if they had made a qualifying payment, which they did not.

Accordingly, the order of the trial court is affirmed.


_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In the Matter of:  Tax Sale 2018-Upset  :
                                         :   No.  238 C.D. 2019
Appeal of:                               :
B. Monte Kemmler and Orpha G.            :
Kemmler                                  :

## *ORDER*

AND NOW, this 28th day of February, 2020, the February 4, 2019, order of the Court of Common Pleas of Mifflin County is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge